Mary L. GARDNER, Appellant,

v.

Frank H. GARDNER, Appellee.

No. 12770.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 21, 1956.

Decided April 30, 1956.

Mr. Albert J. Ahern, Jr., Washington, D. C., with whom Mr. James J. Laughlin, Washington, D. C., was on the brief, for appellant.

Mr. Harlan Wood, Washington, D. C., for appellee.

Before PRETTYMAN, WILBUR K. MILLER and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellee, Frank H. Gardner, has been married four times: (a) to Mae, June 23, 1918, in Alabama; (b) to Charlotte, October 25, 1943, in the Dominican Republic; (c) to Mary (the appellant), March 15, 1950, in Arkansas; (d) to Maria, May 3, 1953, in Portugal. He was awarded a divorce from first wife Mae October 18, 1943, by a Dominican court. The legality of his marriage to second wife Charlotte, which took place just a week later, depends of course upon the validity of the Dominican decree of divorce. Mae, the first wife, was not content to rely upon it, for she obtained a divorce from Frank in Alabama April 10, 1945.

Apparently feeling bound by the Dominican marriage to Charlotte, Gardner obtained a divorce from her July 8, 1949, in Arkansas. Charlotte also seems to have regarded her marriage as valid, but was either uninformed of or unimpressed by Frank's Arkansas divorce, as she obtained a divorce from him February 25, 1953, in Virginia.

When Frank and his third wife—the appellant, Mary—were married in Arkansas March 15, 1950, he had undoubtedly been divorced from Mae, his first wife. So the marriage to Mary was valid if he was then free of Charlotte, the second wife, either because the Dominican marriage to her was bigamous and therefore void from its inception, or because the Arkansas divorce in 1949 had legally terminated the Dominican marriage. We express no opinion as to either question.

The Portuguese marriage to fourth wife Maria, May 3, 1953, is of no significance here, but it may well have been the bombshell which stirred third wife Mary into action. She filed this suit against Frank in the United States District Court for the District of Columbia July 23, 1953, praying the court to define and declare her marital status. She

set forth the matrimonial maze in which Gardner had entangled himself and said she was in doubt as to whether her marriage to him was valid and legal. Significantly, however, she did not allege either its validity or invalidity, but merely sought the court's construction.

Gardner's answer was that he had been advised by counsel he was free to marry Mary and that he had done so in good faith. But he could "neither admit nor deny" her allegations concerning the doubt which beset her as to the validity of their marriage. He could "neither admit nor deny" her doubt about the validity of the Dominican divorce from Mae; and, interestingly enough, he said he was "without information sufficient to either admit or deny the allegation" that on May 3, 1953, he married wife No. 4 in Portugal.

The trial judge heard evidence and concluded neither party was a resident of the District of Columbia when the present suit was filed. Holding jurisdiction was therefore lacking, he dismissed the wife's complaint. Before doing so, however, he found as a fact that "The ceremonial marriage between the Plaintiff and the Defendant, in Arkansas, on March 15, 1950, does not constitute a valid and binding marriage between the parties hereto * * *." The plaintiff wife appeals.

■■■ This suit for declaratory relief cannot be maintained under § 16–422, D.C.Code 1951,[1] because the validity of the marriage was not asserted by one party and denied by the other. Nor can it be maintained under the Federal Declaratory Judgments Act,[2] for there is no "actual controversy" here. Cf. Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 190, 81 L.Ed. 395. What Mary sought was an advisory opinion with respect to the validity of her marriage, which the court is not authorized to give. The complaint was subject to dismissal as failing to state a claim upon which relief could be granted.

■■■ The trial judge disclaimed jurisdiction and dismissed without reaching the merits. He therefore erred in finding as a fact that the marriage between these parties was invalid. The question of its validity is doubtful and difficult. If either party should hereafter institute a proper action to resolve the question, he should not be faced with the findings of fact erroneously made here. So, the judgment appealed from which dismissed the complaint will be vacated, and the case will be remanded to the District Court with instructions to set aside findings of fact Nos. 1 and 2,[3] and then to dismiss the complaint on the ground we have indicated.

■■■ To this point, my brothers and I are in agreement. I think—and they do not agree—that the complaint was also dismissible because of improper venue, in that Gardner lived in Maryland and was served with process there. He did not waive the defect but sought dismissal because of it. Under 28 U.S.C. § 1391(b), which applies because the Declaratory Judgments Act is silent as to venue, this action should have been brought in Maryland.

Judgment vacated and cause remanded with instructions.

1. Which is as follows:
"When the validity of any alleged marriage shall be denied by either of the parties thereto the other party may institute a suit for affirming the marriage, and upon due proof of the validity thereof it shall be decreed to be valid, and such decree shall be conclusive upon all parties concerned."

2. 28 U.S.C. § 2201 (1952) is as follows:
"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

3. These are the findings of fact—perhaps more accurately conclusions of law—that the ceremonial marriage between the parties hereto was invalid and that no common law marriage exists between them.