## FREY v. FREY.
### No. 5539.

Court of Appeals of the District of Columbia.
Argued June 2, 1932.
Decided June 27, 1932.

Mark P. Friedlander, of Washington, D. C., for appellant.

Tracy L. Jeffords, of Washington, D. C., for appellee.

Edwin D. Detwiler and Jean M. Boardman, both of Washington, D. C., amici curiæ.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a decree of the Supreme Court of the district declaring the marriage of appellant and appellee to have been void. A statement of the facts found by the trial court, somewhat condensed, is as follows:

Appellant, Margaret Frey, then domiciled in Virginia, married Richard R. Allen in Arlington county in that state in 1920. They removed to the District of Columbia, and have continuously resided here ever since. In 1921 appellant left Allen, and thereafter maintained adulterous relations with appellee, Ethelbert Frey. In 1924 Allen brought suit in the District of Columbia for divorce from appellant, and named Frey as co-respondent. Frey later induced Allen to dismiss this suit in order that Allen's wife (appellant) might obtain a divorce in Virginia for desertion. In 1925 the Virginia court granted a divorce on that ground.

The trial court found that the Virginia divorce was fraudulent and void and that ap-

pellee Frey "devised the plan by which such fraud was practiced, and * * * aided, assisted, and advised plaintiff * * * in the practice of such fraud. The fraud consisted in the fact that the suit was collusive; in the fact that plaintiff—as she and defendant Frey well knew—was not then domiciled in Virginia, and had not been domiciled therein for more than a year prior to the beginning of that suit; and in the further fact that plaintiff was not an actual resident of Arlington County, Virginia, and had not had her residence therein for several years immediately prior to the institution of the suit; and in the fact that both plaintiff and defendant * * * intended that perjured testimony should and would be given to obtain the decree in the Virginia court; and in the further fact that the husband Allen had a complete defense to the suit brought by his wife in Virginia; and that it was agreed between him and defendant Frey that said defense would be concealed from the Virginia court."

A year and a half later appellant and appellee were married. Allen contracted a second marriage in the middle of 1926, and has continued since then to live with the woman he married and by whom he has had two children.

The present suit was begun by Margaret Frey for limited divorce and maintenance. Ethelbert Frey answered and by cross-bill asked for annulment of the marriage. The decree of the lower court ascertained that the marriage between Margaret Frey and Ethelbert Frey in 1927 was void, and declared the same annulled, vacated, and set aside, on the authority of Simmons v. Simmons, 57 App. D. C. 216, 19 F.(2d) 690, 54 A. L. R. 75. In that case we held that in a proceeding to annul a void marriage the rule of pari delicto and the equitable principle of "clean hands" are inapplicable because in such cases the state becomes a third party. Admittedly the only difference between that case and this is that there the rights of innocent third parties were not involved. In this case the court below found that Allen, appellant's first husband, had a valid cause of divorce against his wife in the District of Columbia, and was induced by appellee, who is a lawyer, to dismiss that suit on the understanding that a valid decree of divorce could be obtained in a Virginia suit brought on behalf of his wife. His second marriage was in good faith, and two children, who are still infants, have been born as a result of this marriage. The property rights of the innocent second wife and

children of Allen, as well as the marital status of the wife and legitimacy of the children, are said to be involved. In such circumstances we should not, if there were an alternative, be disposed to extend the doctrine announced in Simmons v. Simmons, supra.

Undoubtedly it is true that a divorce granted in any state according to its laws by a court having jurisdiction of the cause and of both the parties is valid and effectual everywhere, but a divorce obtained by a person legally domiciled in one state who leaves that state and goes into another solely for the purpose of obtaining a divorce and with no purpose of residing there permanently, is invalid, and the state of bona fide residence may forbid the enforcement within its borders of a decree of divorce so procured. Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366. And this is true even though the decree of divorce recites facts sufficient to give the court jurisdiction. Sewall v. Sewall, 122 Mass. 156, 23 Am. Rep. 299. The underlying reason for this is perhaps nowhere better expressed than by Mr. Justice Field in Maynard v. Hill, 125 U. S. 190, 211, 8 S. Ct. 723, 729, 31 L. Ed. 654, where he said: "Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."

In this case the lower court found, as a matter of fact, that appellant and appellee conspired and contrived by means of falsehood and subterfuge to impose on the jurisdiction of the Virginia court, except for which no decree of divorce would have passed. We are bound by this finding. Appellant never left the District of Columbia, and the finding of the Virginia court that she then resided in Virginia was induced by her perjury, in which appellee connived. The Virginia court, therefore, never acquired any jurisdiction of either party, and equally, therefore, was wholly without power to grant the decree. The only question, therefore, we have to determine is whether, in view of the effect of a decree of annulment of the subsequent marriage of appellant and appellee on the lives and fortunes of the wife and children of Allen, who admittedly are blameless, we ought, at the instance of either appellant or appellee, who are not, to examine a judicial

decree declaring that marriage void and of no effect, or whether we ought to apply the old and familiar maxim of the common law ex turpi causa non oritur actio, as to which Mr. Justice Peckham in McMullen v. Hoffman, 174 U. S. 639, 654, 19 S. Ct. 839, 845, 43 L. Ed. 1117, remarked: "It is stated that Lord Kenyon once said, by way of illustration, that he would not sit to take an account between two robbers on Hounslow Heath."

If it were open to us to choose the course we should take in such circumstances, we should decline to have the processes of the court used to judicially annul the subsequent marriage of appellant and appellee, but should consider it our duty to deny to the one the monetary relief which she seeks, and to the other release from responsibilities which he has grown to regret, and, instead, to apply in their case that wise and salutary principle that the law estops a party to allege in a court of justice his own wrong. But the difficulty confronting us grows out of the fact that here the marriage between appellant and appellee is a void marriage, and this is so because the court below has found, and we must find, that the Virginia court was wholly without jurisdiction to grant a divorce between appellant and Allen. Hence the decree in that court is not a voidable decree but a void decree, and since it is a void decree, it is a nullity, and therefore the marriage subsequently contracted is equally so. In Heflinger v. Heflinger, 136 Va. 289, 301, 118 S. E. 316, 320, 32 A. L. R. 1088, Judge Burks said of a somewhat similar situation: "If the marriage in controversy was void from its inception * * * the decree of annulment adds nothing * * * but simply operates as an estoppel against setting up the validity of the marriage in any future controversy. It leaves the property rights of the parties just as they were before. If the marriage was in fact void, neither party acquired any rights in the property of the other. Their property rights stand as if there had been no marriage. The decree of annulment only ascertains that there had been no valid marriage between the parties, and obviates the necessity of ever thereafter being compelled to show its invalidity. If the complainant were acquiring any rights by virtue of his suit, other than the determination of his status in society, a different rule might apply; but he is acquiring none."

 This, it seems to us, correctly portrays the situation as we find it in the instant case. Section 1283, D. C. Code 1924 (title 14, § 1, D. C. Code 1929), provides that the marriage of any persons whose previous marriage has not been terminated by a decree of divorce shall be absolutely void ab initio. In that case no decree of court is required to declare the invalidity of the marriage, and the only effect of one is to insure to the guilty party certainty in respect of his status. If this were all, we should not be at pains to find a means of accomplishing that result. But what is true of the marriage of appellant and appellee is also true of the marriage of Allen, and, in this view, it is not only in the interest of society but equally in the interest of the innocent wife and children of Allen that the true status of the parties should be judicially found and declared, because to temporize or postpone will only be to delay the evil day and possibly still further to add to the unhappy complications into which they have unwittingly been led. As the Virginia decree of divorce was without effect, Allen's subsequent marriage was void, his wife acquired no property rights, and his children no rights except to have their legitimacy declared under section 972, D. C. Code 1924 (title 14, § 67, D. C. Code 1929). It is in their interests rather than against their interests that this sordid indecency should be brought to a close, and such avenues as are now open to them availed of before it is too late.

Affirmed.